KAB

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Suhad Abdullah, as the personal representative for Mariam Abdullah, deceased,<br><br>Plaintiff,<br><br>v.<br><br>Douglas Anthony Ducey, et al.,<br><br>Defendants. | No. CV 18-02275-PHX-DGC (JZB)<br><br>**ORDER** |

Plaintiff Suhad Abdullah, as the personal representative for Mariam Abdullah and who is represented by counsel, brought this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 28.) Pending before the Court are Defendants Ducey, Ryan, Frigo, and Lutz's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 42) and Plaintiff's Motion for Leave to Amend the Complaint (Doc. 71).

**I.  Background**

In the First Amended Complaint, Plaintiff alleges as follows. Mariam Abdullah, an 18-year-old inmate in the custody of the Arizona Department of Corrections (ADC), was confined in the Lumley Special Management Area at ASPC-Perryville. (Doc. 28 at 2.) Mariam had a well-documented history of mental illness and suicide attempts and was classified as Mental Health level 4 by the ADC. (*Id.*) On July 19, 2016, Mariam was observed looking at family photos and crying. She requested a consultation with psychology services, but did not receive the consultation. (*Id.*) Mariam had been the victim

of a gang rape perpetrated by her then-boyfriend and his friends, and discussed the rape with Defendant Lieutenant Lutz. Lutz told Mariam "you suck at picking boyfriends." (*Id.*) Less than two hours later, Mariam was found unresponsive, hanging in her cell by her neck. (*Id.*) She was pronounced dead several hours later. (*Id.*) Previously, when Mariam discussed her rape, she would immediately be placed on suicide watch. (*Id.*)

Defendant Frigo created "unhealthy, and dangerous conditions for SMA inmates" by failing to comply with maximum custody measures stipulated in *Parsons v. Ryan*. (*Id.* at 3.) By failing to provide adequate treatment for Mariam's mental illness, Defendants discriminated against her. (*Id.*)

Plaintiff is Mariam's mother and the administrator of her estate. (*Id.* at 4.) Defendant Ducey, the Governor of Arizona, had a responsibility to ensure the Department of Corrections was compliant with stipulations in *Parsons v. Ryan* and the Americans with Disabilities Act (ADA). (*Id.*) Defendant Ryan, the Director of the ADC, had the power to order his staff and Defendant Corizon to comply with the *Parsons v. Ryan* stipulations and the ADA, but he did not, "leaving in place conditions that led to Miss Abdullah's death." (*Id.*) Defendant Corizon, "by policy and practice . . . did not provide on-site mental health services necessary to meet the needs of someone with severe mental illnesses like [Mariam]." (*Id.* at 4-5.) Defendant Frigo "had the power to order her staff and Defendant Corizon Health to comply with the *Parsons v. Ryan* stipulations, and the Americans with Disabilities Act, but did not, leaving in place conditions that led to [Mariam's] death." (*Id.* at 5.) Defendant Lutz was aware that Mariam was suicidal, but allowed her to be placed in isolation conditions and in a cell with hanging points. (*Id.* at 5.)

Mental Health Performance Measures agreed on by the Parties in *Parsons v. Ryan* include: (1) "MH-5 prisoners shall be seen by a mental health clinician for a 1:1 session a minimum of every seven days"; (2) "MH-5 prisoners who are actively psychotic or actively suicidal shall be seen by a mental health clinician or mental health provider daily"; (3) "All prisoners on a suicide or mental health watch shall be seen daily by a licensed mental health clinician or on weekend or holidays, by a registered nurse"; (4) "Only licensed mental

health staff may remove a prisoner from a suicide or mental health watch. Any prisoner discontinued from a suicide or mental health watch shall be seen by a mental health provider, mental health clinician, or psychiatric registered nurse between 24 and 72 hours after discontinuation, between seven and ten days after discontinuation, and between 21 and 24 days after discontinuation of the watch." (*Id.* at 7.)

On June 7, 2016, an attorney in *Parsons* documented that Mariam was not being treated in accordance with these measures and wrote a letter to the Arizona Attorney General's Office with this information. (*Id.* at 8-11.)

Plaintiff asserts that Mariam's Eighth Amendment rights were violated because Defendants knew or should have known that she posed a serious risk of harm to herself, but failed to act to abate the risk, placed her in isolation despite knowledge that isolation would exacerbate her condition, denied her psychiatric treatment, and placed her in a cell that contained hanging points. (*Id.* at 15.) Plaintiff asserts that despite Mariam's "known and obvious disability—her severe mental illness, her repeated attempts to self-harm, and her classification among a handful of prisoners so mentally ill that they could not receive proper care within the [ADC]—Defendants Ryan, Ducey, and Frigo failed to reasonably accommodate Mariam's disability by failing to provide her with access to human contact, rehabilitation opportunities, group therapy, and adequate mental health treatment." (*Id.* at 17.)

## II.     **Plaintiff's Motion to Amend**

Plaintiff seeks to amend her First Amended Complaint to add a state law claim for wrongful death against the Corizon Defendants and to remove the claim for violations of the Americans with Disabilities Act against the Corizon Defendants.[1] (Doc. 71.)

In the proposed Count Three for wrongful death, Plaintiff alleges that Defendants Corizon and Ling were aware of both systemic deficiencies in mental healthcare and deficiencies in Mariam's mental healthcare specifically and failed to take measures to abate

---

[1] Defendants Corizon and Ling are the "Corizon Defendants."

the risk of harm to Mariam. Plaintiff alleges that as a result of the negligence and gross negligence of the Corizon Defendants, Mariam died.

Defendants Corizon and Ling request that the Motion to Amend be denied because expert testimony is required to prove the wrongful death claim and Plaintiff did not consult an expert prior to filing her proposed Second Amended Complaint or file the required certification pursuant to Arizona Revised Statutes § 12-2603. Defendants Corizon and Ling assert that Plaintiff's wrongful death claim requires expert testimony to prove the allegations that Defendants Corizon and Ling did not meet the applicable standard of care. In reply, Plaintiff argues that expert testimony is unnecessary because the alleged malpractice is grossly apparent. Plaintiff argues that Corizon agreed to a standard of care when it entered into a stipulation to provide certain healthcare standards in *Parsons*, and although an attorney representing Plaintiffs in the *Parsons* litigation specifically identified Mariam's healthcare as not meeting the standards in *Parsons*, nothing was done to correct the treatment provided to Mariam. Plaintiff also filed a Certificate under Arizona Revised Statutes § 12-2603 certifying that no expert testimony is necessary to prove the healthcare professional's standard of care or liability claim.

"'Medical malpractice action' or 'cause of action for medical malpractice' means an action for injury or death against a licensed health care provider . . ." Ariz. Rev. Stat. § 12-561.

> Both of the following shall be necessary elements of proof that injury resulted from the failure of a health care provider to follow the accepted standard of care:
>
> 1. The health care provider failed to exercise that degree of care, skill and learning expected of a reasonable, prudent health care provider in the profession or class to which he belongs within the state acting in the same or similar circumstances.
>
> 2. Such failure was a proximate cause of the injury.

- 4 -

Ariz. Rev. Stat. § 12-563. Unless medical malpractice is grossly apparent, the standard of care must be established by expert medical testimony. *Rasor v. Northwest Hosp.*, 403 P.3d 572 (Ariz. Ct. App. 2017); *Peacock v. Samaritan Health Svc.*, 765 P.2d 525 (Ariz. Ct. App. 1988). "If a claim against a health care professional is asserted in a civil action, the claimant or the party designating a nonparty at fault or its attorney shall certify in a written statement that is filed and served with the claim or the designation of nonparty at fault whether or not expert opinion testimony is necessary to prove the health care professional's standard of care or liability for the claim." Ariz. Rev. Stat. § 12-2603.

There has not been adequate briefing on this issue and there is not an adequate record for the Court to conclude that Plaintiff should not be allowed to amend her First Amended Complaint due to failure to disclose an expert under § 12-2603. Defendants argue that Plaintiff should not be allowed to amend because she does not have an expert and did not disclose the expert prior to seeking to amend.[2] Plaintiff argues that she does not need to disclose an expert when it is grossly apparent that the standard of care was violated. Defendants have not addressed this argument, but the Court's own research has found some support for Plaintiff's position. *See Peacock*, 765 P.2d at 526-30 (where psychiatric patient either jumped or fell out of fourth floor window and the question was whether the degree of restraint or seclusion was appropriate for the patient and whether the care provided by the hospital met the standard of care, and Plaintiff produced no expert testimony, the Court concluded that testimony regarding the policies and procedures in the ward left a question for the jury to decide.); *Potter v. H. Kern Wisner, M.D., P.C.*, 823 P.2d 1339 (Ariz. Ct. App. 1991) (applying *Peacock* and finding that no expert, but "some evidence of standard of care," created a disputed factual issue to be resolved by the jury).[3]

---

[2] Although Plaintiff was required to serve her written statement with the claim, it is not clear that she would have to serve it with a Motion to Amend.

[3] The *Peacock* Court also stated that "a policy adopted by a health care provider will [not] always equate with the standard of care to be applied in determining if the care and supervision of a patient were negligent [but] under the circumstances [before the court], the existence of hospital protocol [was] some evidence of the standard of care." 765 P.2d

Because it is unclear on this record whether Plaintiff may proceed with her medical malpractice claim without disclosing an expert, and because Defendants have made no other argument that Plaintiff should not be permitted to amend her First Amended Complaint, Plaintiff's Motion to Amend will be granted.

**III.     Defendants Ducey, Ryan, Frigo, and Lutz's Motion to Dismiss**

Defendants Ducey, Ryan, Frigo, and Lutz (the "ADC Defendants") move to dismiss the claims against them for failure to state a claim upon which relief could be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Although the Motion to Dismiss addresses the claims in the First Amended Complaint and the Court has granted Plaintiff leave to file a Second Amended Complaint, because Plaintiff's claims against the ADC Defendants remain the same, the Court will determine whether the ADC Defendants arguments apply to the Second Amended Complaint.

**A.     Federal Rule of Civil Procedure 12(b)(6)**

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual

---

at 529. Thus, whether certain admissible evidence could establish a standard of care appears to be a highly fact-specific inquiry which could rarely be decided at the motion-to-amend or motion-to-dismiss stage.

allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

**B. Discussion**

**1. Eighth Amendment Claims**

To state a claim under § 1983 for threat to safety, an inmate must allege facts to support that he was incarcerated under conditions posing a substantial risk of harm and that prison officials were " deliberately indifferent" to those risks. *Farmer v. Brennan,* 511 U.S. 825, 832-33 (1994). To adequately allege deliberate indifference, a plaintiff must allege facts to support that a defendant knew of, but disregarded, an excessive risk to inmate safety. *Id.* at 837. That is, "the official must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the inference." *Id.*

**a. Eighth Amendment Official Capacity Claims**

To the extent Plaintiff seeks to allege claims against Defendants Ducey, Ryan, Frigo, and Lutz in their official capacities, Defendants assert that they are entitled to Eleventh Amendment immunity because Plaintiff does not seek prospective relief on these claims. (Doc. 56 at 2-3.) Because Plaintiff solely seeks damages against Defendants in their official capacities, Plaintiff's claims against Defendants Ducey, Ryan, Frigo, and Lutz in their official capacities must be dismissed. *See Hafer v. Melo*, 502 U.S. 21 (1991) (in official-capacity suits, the Eleventh Amendment bars retroactive relief, but not prospective relief).

**b. Eighth Amendment Individual Capacity Claim against Ducey**

Defendants argue that Defendant Ducey should be dismissed because there is no allegation that he personally participated in Mariam's treatment and because he is not responsible for establishing the policies and practices regarding healthcare at ADC. In Response, Plaintiff argues that Ducey is liable in his individual capacity due to his "personal participation in the adoption of private health services as the primary provider

for Arizona Department of Corrections." Plaintiff further asserts that Ducey may be individually liable because he was aware of the policy of Ryan of failing to bring the private contractors into compliance with the *Parsons* lawsuit and Stipulation.

"A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Further, there is no respondeat superior liability under § 1983, so a defendant's position as the supervisor of someone who allegedly violated a plaintiff' s constitutional rights does not make him liable. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). A supervisor in his individual capacity "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor*, 880 F.2d at 1045.

Plaintiff alleges no facts indicating that Ducey was aware of the healthcare being provided to Mariam or that he knew of constitutional violations regarding the provision of Mariam's healthcare and failed to act to prevent them. Accordingly, Plaintiff has failed to state a claim against Ducey in his individual capacity, and that claim will be dismissed.

### c. Eighth Amendment Claim Individual Capacity Claim against Ryan

Defendants argue that Defendant Ryan should be dismissed because there are no allegations that he personally participated in Mariam's treatment and because he is not responsible for establishing the policies and practices regarding healthcare at ADC. In response, Plaintiff argues that Ryan has repeatedly been held in contempt in the *Parsons* lawsuit for failing to comply with the stipulations regarding healthcare, Ryan was aware that Corizon was not complying with the stipulation and failed to remedy the failures, and Ryan was informed by the Plaintiffs' attorney in *Parsons* that there was a failure to correct the lack of mental healthcare as applied to Mariam and did nothing to remedy the situation.

Plaintiff alleged that a letter was written to Defendant Ryan's counsel detailing deficiencies in Mariam's healthcare, and that Ryan did nothing to prevent the alleged

1 unconstitutional deficiencies in the healthcare being provided to Mariam. Based on these allegations, Plaintiff has stated an Eighth Amendment claim against Ryan in his individual capacity. Defendants argue that Ryan is entitled to qualified immunity because there are no allegations that Ryan had any involvement with or knowledge of Mariam. But Plaintiff has alleged that Ryan knew there was a serious risk to Mariam's safety and failed to act to prevent it. Accordingly, Defendants' qualified immunity argument will be denied without prejudice on this record. Defendants' Motion will be denied as to the individual capacity claim against Defendant Ryan.

### d.     Eighth Amendment Claim against Frigo

Defendants request that the Court take judicial notice that Warden Frigo retired in April 2016 and Mariam's suicide occurred on July 19, 2016. Defendants argue that since Frigo was not working at ADC in the months prior to Mariam's suicide, Frigo could not have been deliberately indifferent to Mariam's health and safety.

In response, Plaintiff argues that it is irrelevant that Frigo was not working at the prison at the time of Mariam's suicide because in the months leading up to the suicide, Frigo failed to implement policies that could have saved Mariam's life. But Plaintiff alleges no facts indicating that Frigo was aware of the healthcare being provided to Mariam or that she knew of constitutional violations regarding Mariam's healthcare and failed to act to prevent them. Accordingly, Plaintiff fails to state a claim against Frigo in her individual capacity, and Frigo will be dismissed.

### e.     Eighth Amendment Claim against Defendant Lutz

Defendants argue that the First Amended Complaint does not contain sufficient facts alleging the Lutz was aware of a serious risk to Mariam's safety or that Lutz deliberately disregarded a serious risk to Mariam's safety. In response, Plaintiff argues that Lutz, as Mariam's counselor, had prior knowledge of Mariam's serious medical need, had the obligation to provide care pursuant to the *Parsons* stipulation, and failed to provide care for Mariam, which resulted in her suicide. In reply, Defendants argue that Lutz did not have access to Mariam's psychiatric records and asks the Court to take "judicial notice that

privacy laws such as HIPAA prevent non-medical personnel from accessing medical records." Defendants' argument exceeds what the Court may consider on a motion to dismiss. Even if the Court were to take judicial notice of HIPAA rules, the judicial notice provides no information about what Lutz did or did not know about Mariam's mental health. Plaintiff has alleged sufficient facts to state an Eighth Amendment claim against Defendant Lutz in her individual capacity, and Defendants' Motion to Dismiss will be denied as to that claim.

### 2. ADA Damage Claims against Ducey, Ryan, Lutz, and Frigo

Defendants argue that Title II of the ADA only applies to public entities and not individuals, and thus any monetary claims against Ducey, Ryan, Lutz, and Frigo should be dismissed. Defendants also argue that there is no allegation that Lutz had the power to or failed to provide Mariam with a reasonable accommodation under the ADA. In response, Plaintiff acknowledges that Defendants cannot be liable in their individual capacities under the ADA. Accordingly, Plaintiff's ADA claims against Ducey, Ryan, Lutz, and Frigo in their individual capacities will be dismissed.

### 3. ADA Claim against the State of Arizona (official capacity claims)

Defendants argue that since Ducey, Ryan, Frigo, and Lutz are sued in their official capacities, it appears that Plaintiff seeks monetary damages against the State of Arizona for violating the ADA. Defendants argue that this claim should be dismissed because there is no allegation that Mariam was denied mental health treatment because of her disability.

In response, Plaintiff argues that Defendants Ducey and Frigo may be liable for failing to accommodate Mariam's disabilities because it has been shown that adequate psychology services were not available while Mariam was at ASPC-Perryville in violation of *Parsons* Performance Measure #91. Plaintiff asserts that as Governor, Ducey and Defendant Frigo failed to provide equal access to services for inmates despite their disabilities. Plaintiff asserts that Ducey, Ryan, and Frigo had the power to ensure Mariam was given access to psychology services, but on the day of her suicide, Mariam was told

that no such services were available and no reasonable accommodation was made for Mariam to see or speak with another psychological professional.

To allege a violation of Title II of the ADA, Plaintiff must allege facts to support that (1) she is a qualified individual with a disability; (2) she was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of her disability. *See Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002). Plaintiff does not address Defendants' argument that there are no alleged facts that suggest Mariam was denied mental health services because of her disability. The Court agrees that there are no non-conclusory facts alleged demonstrating that Mariam was denied mental health services because of her disability. Accordingly, Plaintiff has failed to state a claim upon which relief can be granted pursuant to the ADA and Plaintiff's ADA claim will be dismissed.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion to Dismiss (Doc. 42) and Plaintiff's Motion for Leave to Amend the Complaint (Doc. 71).

(2) Plaintiff's Motion for Leave to Amend the Complaint (Doc. 71) is **granted**. Plaintiff must file and serve the Second Amended Complaint in accordance with LRCiv 15.1.

(3) Defendants' Motion to Dismiss (Doc. 42) is **granted in part and denied in part** as follows:

    (a) Defendants Ducey and Frigo are dismissed from this action without prejudice.

    (b) The Eighth Amendment official capacity claims against Defendants Ryan and Lutz are dismissed pursuant to Eleventh Amendment immunity.

    (c) Count Two of the First and Second Amended Complaints is dismissed without prejudice.

    (d) The motion is otherwise denied.

(4) The remaining claims in this action are: (1) Count One Eighth Amendment claims against Defendants Ryan and Lutz in their individual capacities; (2) Count One Eighth Amendment claims against Defendants Ling and Corizon; and (3) Count Three Wrongful Death claims against Defendants Ling and Corizon.

Dated this 6th day of August, 2019.

*David G. Campbell*
David G. Campbell
Senior United States District Judge