KAB

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Suhad Abdullah, as the personal representative for Mariam Abdullah,<br><br>Plaintiff,<br><br>v.<br><br>Douglas Anthony Ducey, et al.,<br><br>Defendants. | No.  CV 18-02275-PHX-DGC (JZB)<br><br>**ORDER** |

Plaintiff Suhad Abdullah, as the personal representative for Mariam Abdullah, brought this civil rights action pursuant to 42 U.S.C. § 1983. Defendants Ryan and Lutz move for summary judgment. (Doc. 97, 109.)

**I.    Background**

In the Second Amended Complaint, Plaintiff relevantly alleges as follows. Mariam Abdullah, an 18-year-old inmate in the custody of the Arizona Department of Corrections (ADC), was confined at ASPC-Perryville. (Doc. 78 at ¶ 27.) Mariam had a well-documented history of mental illness and suicide attempts and was classified by the ADC as Mental Health level 5, the highest level requiring the most care. (*Id.* at 2, 8 ¶ 31.) On July 19, 2016, Mariam was observed looking at family photos and crying; she requested a consultation with psychology services, but did not receive the consultation. (*Id.* at 2.) Mariam had been the victim of a gang rape perpetrated by her then-boyfriend and his friends, and discussed the rape the day she died with Defendant Lieutenant Lutz; Lutz told

Mariam "you suck at picking boyfriends." (*Id.*)  Less than two hours later, Mariam was found unresponsive, hanging in her cell by her neck. (*Id.*)  She was pronounced dead several hours later. (*Id.*)

Plaintiff is Mariam's mother and the administrator of her estate. (*Id.* at 4.)  Defendant Ryan, the Director of the ADC, had the power to order his staff and Defendant Corizon to comply with the *Parsons v. Ryan* stipulations, but he did not, "leaving in place conditions that led to Miss Abdullah's death." (*Id.* at 4 ¶ 4.)  Defendant Corizon, "by policy and practice . . . did not provide on-site mental health services necessary to meet the needs of someone with severe mental illnesses like [Mariam]." (*Id.* at 5 ¶ 6.)  Defendant Lutz was aware that Mariam was suicidal, but allowed her to be placed in isolation conditions and in a cell with hanging points. (*Id.* ¶ 8.)

Mental Health Performance Measures agreed on by the Parties in *Parsons v. Ryan* include: (1) "MH-5 prisoners shall be seen by a mental health clinician for a 1:1 session a minimum of every seven days"; (2) "MH-5 prisoners who are actively psychotic or actively suicidal shall be seen by a mental health clinician or mental health provider daily"; (3) "All prisoners on a suicide or mental health watch shall be seen daily by a licensed mental health clinician or on weekend or holidays, by a registered nurse"; (4) "Only licensed mental health staff may remove a prisoner from a suicide or mental health watch.  Any prisoner discontinued from a suicide or mental health watch shall be seen by a mental health provider, mental health clinician, or psychiatric registered nurse between 24 and 72 hours after discontinuation, between seven and ten days after discontinuation, and between 21 and 24 days after discontinuation of the watch." (*Id.* at 8 ¶¶ 32-35.)

On June 7, 2016, an attorney in *Parsons* documented that Mariam was not being treated in accordance with these measures and wrote a letter to the Arizona Attorney General's Office with this information. (*Id.* at 10 ¶ 43.)

Plaintiff asserts that Mariam's Eighth Amendment rights were violated because Defendants knew or should have known that Mariam posed a serious risk of harm to herself, but failed to act to abate the risk, and placed her in isolation, despite knowledge

that isolation would exacerbate her condition, denied her psychiatric treatment, and placed her in a cell that contained hanging points. (*Id.* at 16.)

In Count Three for wrongful death, Plaintiff alleges that Defendants Corizon and Psychology Associate Ling ("Corizon Defendants") were aware of both systemic deficiencies in mental healthcare and deficiencies in Mariam's mental healthcare and yet failed to take measures to abate the risk of harm to Mariam. Plaintiff alleges that as a result of the negligence and gross negligence of the Corizon Defendants, Mariam died. (*Id.* at 19-21.)

The Court dismissed Defendants Ducey and Frigo, the Eighth Amendment official capacity claims against Defendants Ryan and Lutz, and Count Two of the Second Amended Complaint. (Doc. 77.) The remaining claims are: (1) Count One Eighth Amendment claims against Defendants Ryan and Lutz in their individual capacities; (2) Count One Eighth Amendment claims against Defendants Ling and Corizon; and (3) Count Three Wrongful Death claims against Defendants Ling and Corizon. Defendants Ryan and Lutz move for summary judgment as to the claims against them in Count One.

**II.     Summary Judgment Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable

jury could return a verdict for the nonmovant.  *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249.  In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor.  *Id.* at 255.  The court need consider only the cited materials, but it may consider any other materials in the record.  Fed. R. Civ. P. 56(c)(3).

### III. Eighth Amendment

Under the Eighth Amendment, a prisoner must demonstrate that a defendant acted with "deliberate indifference to serious medical needs."  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  There are two prongs to the deliberate-indifference analysis: an objective prong and a subjective prong. First, a prisoner must show a "serious medical need." *Jett*, 439 F.3d at 1096 (citations omitted).  A "'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal citation omitted).  Examples of a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *McGuckin*, 974 F.2d at 1059-60.

Second, a prisoner must show that the defendant's response to that need was deliberately indifferent. *Jett*, 439 F.3d at 1096. An official acts with deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety; to satisfy the knowledge component, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment," *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (internal citations and quotation marks omitted), or when they fail to respond to a prisoner's pain or possible medical need. *Jett*, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835. "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. California Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

**IV.   Ryan's Motion for Summary Judgment**

Defendant Ryan argues that he is entitled to summary judgment as to the Eighth Amendment claim because he had no knowledge of Mariam's medical/psychological condition or treatment, and was thus not deliberately indifferent to Mariam's serious medical needs. (Doc. 97.) Ryan argues that he is alternatively entitled to qualified

immunity because he did not act in violation of established Supreme Court or Ninth Circuit precedent. (*Id.*)

### A. Facts

Defendant Ryan was the Director of the ADC between January 30, 2009 and September 13, 2019. (Doc. 98 ¶ 1; Doc. 115 ¶ 1.) Ryan was not personally acquainted or familiar with Mariam. (Doc. 98 ¶ 2; Doc. 115 ¶ 2.) A June 7, 2016 letter was sent from the American Civil Liberties Union lawyer to Assistant Attorney General Lucy Rand in *Parsons v. Ryan* describing Plaintiff's mental health condition and to notify Defendants of their non-compliance with Measures 3 and 8 of the Maximum Custody Outcome Measures at ASPC-Perryville as demonstrated by the treatment of Mariam. (Doc. 98 ¶ 4; Doc. 115 ¶ 6 ; Doc. 117 ¶ 24.) *Parsons* is a class action lawsuit filed on behalf of ADC prisoners alleging that health care, including mental health care, provided to inmates by the ADC was constitutionally inadequate. (Doc. 98 ¶ 20; Doc. 115 ¶ 20.) Ryan was sued in his official capacity in *Parsons* and understands that Plaintiffs' attorneys in *Parsons* consistently sent letters to Defendants' attorneys concerning individual inmate's medical care and that those letters were forwarded to the appropriate medical provider for a response. (Doc. 98 ¶¶ 5, 8; Doc. 115 ¶¶ 6, 7.)

Between March 2, 2013 and July 1, 2019, the ADC contracted with Corizon, LLC to provide inmate health care services to prisoners in the custody of the ADC. (Doc. 98 ¶ 11; Doc. 115 ¶ 10.) Ryan is not a licensed medical professional and he was never involved in the medical diagnosis or treatment of any inmate. Clinical actions regarding health care services provided to inmates, including decisions regarding treatment for mental health issues, are the responsibility of the qualified health care professionals upon whom Ryan relied. (Doc. 98 ¶ 14; Doc. 115 ¶ 13.) Ryan did not know anything about Mariam's medical care until he saw the Complaint in this action. (Doc. 98 ¶ 14; Doc. 115 ¶ 14.)

Pursuant to the *Parsons* stipulation, if counsel for plaintiffs allege that defendants have failed to comply with the Stipulation and plaintiffs' counsel provide defendants a

written statement describing the alleged non-compliance (Notice of Non-Compliance), then defendants have 30 days in which to respond to the allegations of non-compliance. (Doc. 98 ¶ 21; Doc. 115 ¶ 21.)  The *Parsons* plaintiffs' attorneys send the Notice of Non-Compliance to Rand, and if the Notice is healthcare-related, Rand forwards it to the top local contact or designee for the contracted healthcare provider at the time and that person delegates responsibility of responding to the appropriate individuals. (Doc. 98 ¶¶ 22-23; Doc. 115 ¶¶ 21.)

### B. Discussion

Ryan asserts that he had no knowledge of Mariam's medical condition and knowledge cannot be imputed to him based on the Notice of Non-Compliance sent to Rand in the *Parsons* case because he was sued in his official capacity and had no individual involvement in dealing with the way Notices of Non-Compliance were handled.  In Response, Plaintiff argues that there is a genuine issue of material fact regarding Ryan's "ultimate liability" for the decision to "delegate the duties of oversight of mental health care for prisoners and Plaintiff." (Doc. 113 at 2.)

Individual liability hinges upon a defendant's participation in the deprivation of a constitutional right.  To connect a defendant to a particular claim, a plaintiff must demonstrate that he suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).  In other words, a defendant's liability under § 1983 exists only where a plaintiff makes a showing of personal participation by the defendant in the alleged violation. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

On the record before the Court, there is no evidence that Ryan was personally involved in decisions regarding Mariam's mental health care or knew about the letter sent to Ms. Rand regarding the alleged deficiencies in the care provided to Mariam. Plaintiff does not present any evidence that the system set up to respond to Notices of Non-Compliance was so deficient that it amounted to conscious disregard of Mariam's health or safety. *See Peralta v. Dillard*, 744 F.3d 1076, 1086-87 (9th Cir. 2014) (defendant not

aware of risk of harm where he was not a dentist, he did not independently review medical chart before signing off on appeal and had no expertise to contribute to a review, and he relied on dental staff who investigated the plaintiff's complaints). Accordingly, there is no evidence that Ryan was aware of a serious risk of harm to Mariam. His Motion for Summary Judgment will be granted.

**V.  Lutz's Motion for Summary Judgment**

Defendant Lutz argues that she is entitled to summary judgment because she had no medical training, access to or knowledge of Mariam's medical or psychiatric records, her statement to Mariam that she "sucked at picking boyfriends" cannot be shown as the cause of Mariam's death, and there is no established law that the conversation between Lutz and Mariam could be the basis for a constitutional violation. (Doc. 109.)

**A.  Facts**

Defendant Lutz was an employee of the ADC from April 30, 2011 to September 1, 2019 and was assigned as a Lieutenant at the ASPC-Perryville Lumley Unit in July 2016. (Doc. 110 ¶ 1; Doc. 118 ¶ 1.) At the time of Mariam's suicide, she was housed at the Lumley Unit. (Doc. 110 ¶ 2; Doc. 118 ¶ 2.) On July 19, 2016, Lutz heard that Mariam wanted to speak with her and Lutz brought Mariam into the sergeant's office so they could converse in private. (Doc. 110 ¶¶ 4-5; Doc. 118 ¶¶ 4-5.) Lutz thought Mariam was in in good spirits and was opening up to her because Mariam was smiling and talking. (Doc. 110 ¶¶ 6, 8.)

During the conversation, Lutz asked Mariam if she wanted to speak with Psychiatric Associate Patricia Ling, but Mariam said she was fine and did not want to go to Mental Health. (Doc. 110 ¶¶ 10-11; Doc. 118 ¶¶ 10-11.) Mariam told Lutz that she had been in to see PA Ling earlier and had confided in Ling that when she was 14, she was raped by friends of her boyfriend and the rape occurred at her boyfriend's orders. (Doc. 110 ¶ 12; Doc. 118 ¶ 12.) Lutz then told Mariam "you suck at picking boyfriends and you are not allowed to pick another boyfriend when you get out of here," or told her that when she gets out she needs help picking boyfriends because she "sucks" at it. (Doc. 110 ¶ 13; Doc. 118

¶ 13.) Mariam then confided in Lutz that she had never told anyone about the rape, not even her mother. (Doc. 110 ¶ 15; Doc. 118 ¶ 15.) Lutz told Mariam that the rape was not her fault and she did not need to feel bad about it. Mariam responded that Lutz sounded like her mom. (Doc. 110 ¶¶ 16-17; Doc. 118 ¶¶ 16-17.) Lutz often took time out to speak with the inmates when they wanted someone to talk to and would help them if she was able. (Doc. 110 ¶ 18; Doc. 118 ¶ 18.) Lutz stayed late to talk to Mariam and be with her that day. (Doc. 110 ¶ 19; Doc. 118 ¶ 19.) Mariam thanked Lutz for speaking with her. (Doc. 110 ¶ 20; Doc. 118 ¶ 20.)

After Mariam left, Lutz told Ling that Mariam had opened up to her and what they had discussed. (Doc. 110 ¶ 21; Doc. 118 ¶ 21.) Ling told Lutz that Mariam had also opened up to Ling when they spoke earlier that day and said it was a good thing that Mariam had begun to open up. (Doc. 110 ¶¶ 22-23; Doc. 118 ¶¶ 22-23.) Lutz was shocked and sad when she learned that Mariam committed suicide. (Doc. 110 ¶ 26.)

Mariam never told Lutz that she had a problem with other inmates or ADC staff and never requested to be moved out of her unit. (Doc. 110 ¶ 27; Doc. 118 ¶ 27.) Months later, some inmates told Lutz that Mariam was being harassed in the unit, but Lutz did not know it at the time. (Doc. 110 ¶ 28; Doc. 118 ¶ 28.) Lutz does not have access to any inmate's medical or mental health records and is not a licensed mental health provider. (Doc. 110 ¶ 30; Doc. 118 ¶ 30.)

### B.     Arguments

Defendant Lutz asserts that there was nothing in the conversation between her and Plaintiff that could be characterized as a purposeful act or failure to respond to a prisoner's pain or possible medical need. Lutz asserts that even knowing Mariam's history of self-harm and suicidal issues, there was nothing in Mariam's demeanor or conduct during their interaction the day Mariam died that would have led Lutz to believe Mariam had a serious medical need or that there was an excessive risk to Mariam's health.

. . . .

Lutz asserts that she specifically asked Mariam if she wanted to talk to PA Ling, but Mariam said she was fine and did not want to go to Mental Health, and that Lutz went to Ling to discuss the conversation she had with Mariam. Lutz asserts that she acted reasonably by asking Mariam if she wanted to speak to a psychiatric associate and telling the psychiatric associate about the conversation. Lutz asserts that there is no evidence that the conversation she had with Mariam was the cause of her suicide, and that she had nothing to do with Mariam's housing assignment, who she lived with, or where she lived.

Plaintiff argues that Lutz's decision to speak with Mariam in private about topics that Lutz knew to be disturbing to Mariam, without a trained mental health provider present, create a genuine issue of material fact as to whether these decisions rise to deliberate indifference to Mariam's serious health need. Plaintiff asserts that "Lutz should have known that the purpose of separating the security and mental health roles is because patients should be able to trust mental health staff in order to give them accurate information on which to base treatment, and not fear restraint for having been candid about their ideation." (Doc. 116 at 11-12.)

**C.     Discussion**

Mariam's was a tragic loss, but there is no evidence in this record that Lutz acted with deliberate indifference to Mariam's serious medical needs. Although the evidence shows that Lutz knew that Mariam had a serious medical need in the form of serious mental health issues, the record evidence does not support that Lutz was deliberately indifferent to her serious medical needs. Rather, the evidence shows that Mariam asked to speak with Lutz and Lutz complied.

Plaintiff appears to argue that Lutz should have known that speaking to Mariam would exacerbate her serious mental health issues, but there is nothing in the record to support this assertion. Indeed, if Lutz had refused to speak with Mariam, it is possible that such refusal could constitute indifference to Mariam's needs. Rather, the undisputed evidence shows that Lutz agreed to speak with Mariam and then asked Mariam if she would

like to see Ling, but Mariam declined to speak with Ling. The fact that Lutz did not force a meeting with Ling does not constitute deliberate indifference.

With regard to the content of their conversation, the undisputed evidence shows that Lutz was trying to be supportive of Mariam. As Plaintiff points out, Lutz was not a qualified mental health expert and may have upset Mariam by criticizing or joking about her ability to pick boyfriends, but whether Mariam was upset by this conversation is conjecture.

In sum, the evidence in the record shows that Lutz was responsive to Mariam's needs, that she asked Mariam if she would like to see Ling, but Mariam refused, and there was no evidence in Mariam's demeanor that she needed to be seen immediately by Ling. The fact that Lutz was unqualified to assess Mariam's mental state does not equate to conscious disregard of Mariam's serious medical needs or that she subjected Mariam to unnecessary and wanton infliction of pain. Accordingly, Defendant Lutz's Motion for Summary Judgment will be granted.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendant Ryan's Motion for Summary Judgment (Doc. 97) and Defendant Lutz's Motion for Summary Judgment (Doc. 109).

(2) Defendant Ryan's Motion for Summary Judgment (Doc. 97) is **granted**. Defendant Ryan is dismissed from this action with prejudice.

(3) Defendant Lutz's Motion for Summary Judgment (Doc. 109) is **granted**. Defendant Lutz is dismissed from this action with prejudice.

(4) The remaining claims in this action are: (1) Count One Eighth Amendment claims against Defendants Ling and Corizon; and (2) Count Three Wrongful Death claims against Defendants Ling and Corizon.

Dated this 22nd day of May, 2020.

David G. Campbell
Senior United States District Judge